**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| JOHN DOE, | Case No. 1:16-cv-987 |
| Plaintiff, | JUDGE: Michael Barrett |
| v. | REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |
| THE UNIVERSITY OF CINCINNATI, ET AL. | |
| Defendants | |

Plaintiff John Doe respectfully submits thus Reply to Defendant's Response in Opposition to Plaintiff's Motion for Preliminary Injunction. Pursuant to Federal R. Civil Rule 65, John Doe seeks a preliminary injunction prohibiting Defendants the University of Cincinnati, et al., (collectively, unless indicated otherwise, "UC") from suspending him in violation of his constitutional due process rights and rights under Title IX.

**FACTS**

The key fact concerning the process afforded John Doe are generally not in dispute: the only evidence of wrongdoing doing by John Doe was in the form of a "statement" from his accuser that was read to the UC hearing panel; John Doe was never given the opportunity to confront his accuser. John Doe was never provided any opportunity to confront his accuser. Jane Roe never testified at the ARC Hearing. No witnesses to the events between John Doe and Jane Roe testified. No physical evidence corroborated Jane Roe's story. This is confirmed by the affidavits filed by UC in opposition to the Motion. *See* Declaration of Aniesha Mitchell ¶9 (" . . . Jane Roe's statement was read. To conclude the hearing, John Doe was permitted to give a closing statement to the panel.").

1

**ARGUMENT**

**A.    The Plaintiff Has A Substantial Likelihood of Success.**

   **1.    Uncontested Legal Issues**

UC does not contest that students facing discipline must be afforded the opportunity to defend, enforce or protect their rights through presentation of their own evidence, confrontation of adverse witnesses, and oral argument. UC also doe not contest that in determining whether UC provided constitutionally adequate due process, this Court should apply the traditional three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) ( (1) the nature of the private interest affected -- that is, the seriousness of the charge and potential sanctions, (2) the danger of error and the benefit of additional or alternate procedures, and (3) the public or governmental burden were additional procedures mandated.)

   Similarly, John Doe does not contest UC's correct claim that a school disciplinary proceeding does not require all of the due process protections present in a criminal trial.  *See* UC Memo. at 8-9. However, UC is incorrect that "notice and opportunity to be heard" is the alpha and omega of the due process analysis.  *See* generally UC Memo. at 7-9.[1]  The Sixth Circuit has stated, "the additional

-------

[1] The decisions cited by UC for this proposition involve situations quite unlike the situation presented in this case. *Marshall v. Ohio Univ.*, S.D.Ohio No. 2:15-cv-775, 2015 U.S. Dist. LEXIS 155291 (Nov. 17, 2015); Brown v. Univ. of Kan., 16 F. Supp. 3d 1275 (D.Kan.2014*); Caiola v. Saddlemire*, D.Conn. No. 3:12-CV-00624, 2013 U.S. Dist. LEXIS 43208 (Mar. 27, 2013).  *Marshall and Brown* did not involve situations where the fact finder had to make a credibility determination. In *Marshall v. Ohio Univ.* the student did not allege that he was not permitted to fully respond to and defend against the  allegations against him. 2015 U.S. Dist. LEXIS 155291, at *38.  In *Brown* a student was denied admission to law school after he failed to disclose prior criminal convictions, a situation where no facts were contested. 16 F. Supp. 3d at 1281.   *Caiola* had no cross-examination concerns.  In *Caiola* the student, unlike John Doe in this case, had "the opportunity to question witnesses and the Complainant." 2013 U.S. Dist. LEXIS 43208 at *8

procedures required will vary based on the circumstances and the three prongs of *Mathews*." *Flaim*, 418 F.3d at 635 (emphasis supplied).

### 2. John's Doe's Due Process Rights To Cross-Examination Was Violated

The UC Memo. illustrates the old adage that if you ask the wrong question, you get the wrong answer.[2] The wrong question is: whether or not there is a generalized right to cross-examination in school disciplinary hearings? The answer: no, and the Plaintiff does not suggest otherwise.[3]

The right question is: whether there is a right to confront adverse witnesses when the information supplied by those witnesses is the reason for the adverse actions and there is a question of credibility to be resolved by the finder of facts?

- The Supreme Court answered this question "yes" in *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). The Supreme Court said, "in almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." 397 U.S. at 269-270.

---

[2] *Compare* Thomas Pynchon, *Gravity's Rainbow* (1973) ("If they can get you asking the wrong questions, they don't have to worry about answers."); U2, *"11 O'Clock Tick Tock"* (1983) ("We thought that we had the answers, It was the questions we had wrong")

[3] UC's reliance on *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920 (6th Cir.1988), and *C.Y. v. Lakeview Pub. Schs*, 557 F.App'x 426 (6th Cir.2014) (unpublished), is misplaced. UC Memo. at 10-11. *Newsome* was decided 17 years before *Flaim* and, as a result, to the extent it is inconsistent with *Flaim*, is no longer good law. Moreover, *Newsome* involved a high school, *see infra*. n. 7, and presented a number of unique facts not present in this case that tipped the *Mathews* balancing test in that case against cross-examination. In *Newsome*, but unlike in this case, the court believed that the credibility of the witnesses was "initially assessed by a school administrator -- in this case, the school principal -- who has, or has available to him, a particularized knowledge of the student's trustworthiness." 842 F.2d at 924. In addition, in *Newsome*, but unlike in this case, the school had an interest in "protecting student witnesses from ostracism and reprisal." 842 F.2d at 925. *See Rippy v. Bd. of Sch. Trs.*, S.D.Ind. CAUSE NO. IP 99-1508-C H/G, 2000 U.S. Dist. LEXIS 7427, at *12 (Feb. 4, 2000) (observing that *Newsome* involved a specific fact pattern related to drug usage and "stop[ped] short," however, of establishing general propositions for student hearings).

The *C.Y.* case does not appear to discuss the cross-examination issue in detail, most likely because the student had admitted to a violation of school rules and, as a result, the fact-finder was not required to make a credibility determination. 557 F.App'x at 428 (noting that student admitted to sending a threatening tweet and that she threatened another student during conversations with other students).

- The Second Circuit answered this question "yes" in *Winnick v. Manning*, 460 F.2d 545 (2d Cir. 1972). In *Winnick*, the Second Circuit said, "if this case had resolved itself into a problem of credibility, cross-examination of witnesses might have been essential to a fair hearing." *Id.* at 550.

- The Sixth Circuit answered this question "yes" in *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005). The Sixth Circuit, relying on *Winnick*, said that when there is "a choice between believing an accuser and an accused, . . . cross-examination is not only beneficial, but essential to due process." 418 F.3d at 641.[4]

UC responds to this "overwhelming authority" by suggesting that these cases do not hold that "cross-examination is a due process requirement" and that the language from *Winnick* is clearly dictum.[5] UC Memo at 15. This argument would be germane to a facial challenge to the UC procedures, but has no application to the as-applied claim in this case. Rather, the necessity of cross-examination "must be determined by a careful weighing or balancing of the competing interests implicated *in the particular*

---

[4] In *Flaim* the student was convicted of a felony, which was enough to justify an adverse action by the school. As a result, as the Sixth Circuit observed, additional process from confrontation of the accuser would have provided "no benefit to Flaim or any reduced risk of error." 418 F.3d at 639-640.

[5] UC, in its Memo. at 15 *cites Doe v. The Ohio State Univ.*, S.D.Ohio No. 2:15-cv-2830, 2016 U.S. Dist. LEXIS 21064 (Feb. 22, 2016) (Kemp, M.J.). The reliance on a magistrate's opinion in *Doe v. Ohio State* to support the argument that *Winnick's* language is dictum is curious, since in a prior opinion in the same case Judge Frost clearly followed the *Winnick-Flaim* approach, concluding that cross-examination is required in cases where the trier of fact is required to make a credibility determination:

> The [Sixth Circuit] court of appeals has explained that an accused does not have a constitutional right to cross-examine his accuser in a school disciplinary proceeding. *Flaim*, 418 F.3d at 641. But the court of appeals has also noted that in cases that turn on an issue of credibility, cross-examination of witnesses might be necessary for a fair hearing. *Id.* Thus, when a panel is confronted with a choice of whom to believe between the accuser and the accused, "cross-examination is not only beneficial, but essential to due process." *Id.*

*Doe v. The Ohio State Univ.*, S.D.Ohio No. 2:15-cv-2830, 2015 U.S. Dist. LEXIS 141229, at *12-13 (Oct. 16, 2015). Factually, *Doe v. Ohio State* is distinguishable. In that case, unlike this case, the alleged victim testified at the school disciplinary. The issue before the court was whether the school improperly withheld information that the student could have used to more effectively cross-examine the alleged victim.

*case.*" *Gorman v. Univ.* of R.I., 837 F.2d 7, 14 (1st Cir.1988) (emphasis supplied) (rejecting due process challenge where student had the ability to question witnesses)*, citing Mathews. See also generally Flaim* (applying *Mathews* test).

The *Winnick-Flaim* approach is an accurate description of the state of the law.[6]  Numerous federal courts have cited and followed these decisions.  In most of these cases the court first cites the law that UC cites, noting that there is no general right to cross-examination.  Then, the courts observe that *Winnick* and *Flaim* create an exception for situations where the fact-finder has to make a credibility determination.  Typical of this approach is the decision in *Bridgeforth v. Popovics*, N.D.N.Y. No. 8:09-CV-0545, 2011 U.S. Dist. LEXIS 56904, at *29 (May 25, 2011).  In that case, the court first observed, "The right to cross-examine witnesses has not been considered an essential requirement of due process in school disciplinary proceedings."  2011 U.S. Dist. LEXIS 56904, at *29.  This is generally where UC stops reading.  *Compare* UC Memo. at 12.  But, the court continued where UC stops.  The *Bridgeforth* court, citing to *Winnick*, held, "if a case is essentially one of credibility, the 'cross-examination of witnesses might [be] essential to a fair hearing.'" *Id. quoting* Winnick, 460 F.2d at 550.  Other cases follow this approach.[7]  In *Doe v. Brandeis Univ.*, for example, the court considered a situation where the school did not permit a student to confront his accuser.  *Doe v. Brandeis Univ.*, D.Mass. Civil Action No. 15-11557-FDS, 2016 U.S. Dist. LEXIS 43499 (Mar. 31, 2016).  The court said, "the elimination

---

[6] Judge Beckwith's decision in *Doe v. Univ. of* Cincinnati is inapposite.  *U.C. Memo. at 12-13 citing Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586 (S.D.Ohio 2016). Judge Beckwith was not presented with a situation where the alleged victims failed to appear for the hearing. *Id.* at *37 (observing that "Plaintiffs were able to submit written questions to witnesses in lieu of direct cross-examination").

[7] *See Holmes v. Poskanzer,* N.D.N.Y. No. 1:06-CV-0977, 2008 U.S. Dist. LEXIS 13545, at *12 (Feb. 21, 2008) (describing the *Winnick* situation but observing "it is very unusual for due process to require cross-examination of witnesses, [but] it is impossible to rule out").

of such a basic protection for the rights of the accused raises profound concerns," and adopted the *Winnick-Flaim* framework explicitly by observing, "The ability to cross-examine is most critical when the issue is the credibility of the accuser." *Id.* citing *Donohue v. Baker*, 976 F. Supp. 136, 147 (N.D.N.Y. 1997); *Winnick*, 460 F.2d at 550. The *Brandeis* court said:

> Here, there were essentially no third-party witnesses to any of the events in question, and there does not appear to have been any contemporary corroborating evidence. The entire investigation thus turned on the credibility of the accuser and the accused. Under the circumstances, the lack of an opportunity for cross-examination may have had a very substantial effect on the fairness of the proceeding.

2016 U.S. Dist. LEXIS 43499, at *101. In *Furey v. Temple Univ.*, 884 F.Supp.2d 223, 251-252 (E.D.Pa.2012) the court cited to *Winnick* and *Flaim* to support the idea that cross-examination was only unnecessary where the relevant facts were undisputed. The court held that cross-examination was required in a case of student discipline where the facts were in dispute:

> The purpose of cross-examination is to ensure that issues of credibility and truthfulness are made clear to the decision makers. Given the importance of credibility in this Hearing . . . the Court considers this an important safeguard

884 F.Supp.2d at 251. Another court relied on *Flaim* to find that cross-examination was necessary in certain situations involving discipline against a high school student accused of sexually assaulting a fellow student. *Wolski v. Orange Cnty. Sch. Bd.*, M.D.Fla. No. 6:13-cv-1623-Orl-31TBS, 2015 U.S. Dist. LEXIS 4450 (Jan. 14, 2015). The *Wolski* court relied on *Flaim* to hold that the "right to cross-examine a witness in a school discipline context exists in only the most serious of cases and where the disciplinary determination turns on credibility." *Id.* at *4*, *citing* Flaim, , 418 F.3d at 641 (noting that cross-examination is crucial in cases that turn on credibility). The *Wolski* court denied a motion to dismiss premised on the claim, identical to UC's claim here, that there is not general right to cross examination. The court said,

6

This matter presents a serious case, . . . Here the accused and accuser's accounts are what the disciplinary matter turned on. Accordingly, cross-examination may have been required to preserve basic fairness.

2015 U.S. Dist. LEXIS 4450 at *6.

UC has not cited to this Court a single case rejecting the *Winnick-Flaim* approach and holding that cross-examination is not an essential component of due process when the fact-finder has to make a credibility determination.[8]  UC's suggestion that courts in the Sixth Circuit have held that cross examination is not necessary in school disciplinary hearings is incomplete, as these cases merely state what *Winnick* and *Flaim* stated, that there is no general right to cross-examination. *See* UC Memo. at 12*, citing Sandusky v. Smith*, W.D.Ky. No. 3:10-CV-00246-H, 2012 U.S. Dist. LEXIS 142225 (Oct. 2, 2012); *T.S. v. Menifee Cnty. Bd. of Educ.*, E.D.Ky. No. 05-12-KSF, 2006 U.S. Dist. LEXIS 2942 (Jan. 10, 2006).  The cases did not, however, address the second part of the *Winnick-Flaim* analysis, whether cross-examination was necessary in those particular cases because the fact finder had to make a credibility determination.  The courts n the cases cited by UC did not have to engage in this analysis

---

[8] UC muddies the waters by relying almost exclusively on opinions involving discipline of high school students.  *See* UC Memo. at 9-11, *citing Jahn v. Farnsworth*, 617 F. App'x 453 (6th Cir. 2015 (unpublished); *Newsome, supra*,; *C.Y. ex rel. Antone v. Lakeview Pub. Schools*, 557 F.App'x 426 (6th Cir. 2014).  These cases are completely inapposite.  Courts have long recognized that high school and college students are different and that different standards govern the constitutional rights of high school and college students.  High schools and universities have differing pedagogical goals and *in loco parentis* roles.  College students are more mature and reside on campus and thus are subject to university rules at almost all times.  Finally, "a looser standard of constitutional review of high school regulations is appropriate because of the greater flexibility possessed by the state to regulate the conduct of children as opposed to adults."   *Alex v. Allen*, 409 F.Supp. 379, 384 (W.D.Pa.1976), *citing Ginsberg v. New York*, 390 U.S. 629 (1968) ("Even where there is an invasion of protected freedoms the power of the state to control the conduct of children reaches beyond the scope of its authority over adults.").  *See also Bahr v. Jenkins*, 539 F.Supp. 483, 488 (E.D.Ky.1982) (court:  "Nor am I saying anything about maintaining discipline on college campuses.  We are talking here about a high school."); *Moore v. Student Affairs Comm.*, 284 F.Supp. 725, 730, fn. 10 (M.D.Ala.1968) (observing that "there are obviously functional differences between the disciplinary requirements of high school and college students")

because the cases involved high school students where the facts were not in dispute as a result of an admission of wrongdoing by the student. *Sandusky*, 2012 U.S. Dist. LEXIS 142225, at *6 (high school student did not contest facts and merely read an apology for her role in brining alcohol to school event); *T.S.*, 2006 U.S. Dist. LEXIS 2942, at *1 (Jan. 10, 2006) (high school student admitted that "he had sold drugs at school during the prior year").

UC's defense of the use of hearsay in John Doe's hearing actually illustrates the due process problem in this case.  UC notes, correctly, that the Due Process clause does not prohibit the use of hearsay in school disciplinary hearings. UC Memo. at 14 n. 3. John Doe has acknowledged that the Due Process Clause does not prohibit the use of hearsay in school disciplinary hearings.  But, as with UC's argument about cross-examination, this observation is incomplete.  UC fails to address the problem when an administrative hearing relies exclusively on hearsay *without* providing any opportunity or mechanism to question the declarant.  Courts have observed that the Due Process Clause is violated when an administrative hearing, as in this case, relies upon hearsay evidence *and* does not provide any opportunity for the person facing an adverse action to compel the attendance of the declarants so that, if desired, the veracity of the hearsay statements can be attacked.[9]  In *Ortiz v. Eichler*, 616 F.Supp. 1066, 1068 (D.Del.1985), a court observed that due process issues might arise not from the "admission of hearsay *per se*, but rather the lack of opportunity to confront and cross-examine witnesses."  The court noted that an administrative hearing could admit hearsay as long as the party could compel the attendance of the witnesses "because claimants would then have the power to compel confrontation

_____

[9] *Cf. United States v. Inadi*, 475 U.S. 387, 398 (1986) (suggesting that a defendant is protected from prejudicial hearsay when the defense may subpoena an available declarant); *Richardson v. Perales*, 402 U.S. 389 (1971) (hearsay admissible at an administrative hearings where the party the hearsay was offered against had an opportunity to subpoena witnesses).

8

with, and cross-examination of, hearsay declarants." *Id.* (avoiding constitutional issues and deciding on the basis of regulations). In *Basco v. Machin*, 514 F.3d 1177 (11th Cir. 2008), the Eleventh Circuit suggested that an administrative decision relying solely on hearsay could violate due process guarantees when parties could not subpoena the declarants. *See id.* at 1183. Finally, in *Edgecomb v. Hous. Auth.*, 824 F.Supp. 312 (D.Conn.1993), the court found that the due process rights of Section 8 tenants in an eviction hearing was violated when the hearing panel relied on a police report but neither the police officers nor witnesses mentioned in the report were available for resident to confront or cross-examine. The court observed, "Denying the tenant the opportunity to confront and cross-examine persons who supplied information upon which the housing authority's action is grounded is improper." 824 F.Supp. at 315-16. *See also Woods v. Willis*, 515 F.App'x 471, 483-484 (6th Cir.2013) (relying in part in *Basco*; suggesting hearsay evidence "must be at the very least reliable and of proven probative value."); *Treadwell v. Schweiker*, 698 F.2d 137, 144 (2d Cir.1983) (violation of due process occurred when subpoenas were not enforced and party was denied "an opportunity to confront adverse hearsay reports").

The ultimate weakness of UC's maximal position (seemingly "no cross-examination ever") is seen by the failure of UC to engage in the *Mathews* analysis. This is because application of the *Mathews* factors leads clearly to the conclusion that due process includes the right to confront adverse witnesses when the information supplied by those witnesses is the reason for the adverse actions and there is a question of credibility to be resolved by the finder of facts.

UC does not contest that John Doe has an interest in avoiding unfair or mistaken exclusion from the benefits of the educational system. UC also does not contest that cross-examination in this case would have been valuable. This value is not only in the abstract, although that is significant. To deny the value of cross examination is to deny hundreds of years of tradition recognizing the

9

fundamental role of cross-examination in the truth finding process, and the Framers of the Fifth and Fourteenth Amendments would likely be astounded to learn that a valuable benefit could be taken from a citizen in a Star Chamber-type proceeding relying on uncorroborated hearsay and *ex parte* testimony.   But in this case, John Doe would have used cross-examination to question Jane Roe about inconsistencies in her statements and accommodations she received from UC as a direct result of her claim to be a victim of sexual assault, both of which would have undermined her credibility.   Finally, UC does not contest that its interest in preventing cross-examination is limited, as the Code of Student Conduct allows cross-examination through written question of witnesses. (*See* Complaint Exhibit A at 30 ("The accused and the complainant shall have the right to submit . . . written questions to be asked of all adverse witnesses who testify in the matter.").)

Accordingly, John Doe has a substantial likelihood of success on his claim that he was denied due process as a result of his inability to confront adverse witnesses when the information supplied by that witness was the reason for the adverse actions and there was a question of credibility to be resolved by the finder of facts.

**B.  Irreparable Harm**

UC and John Doe disagree about whether suspension from UC constitutes irreparable harm because it would deny John Doe the benefits of education at his chosen school, would damage his academic and professional reputations, and may affect his ability to enroll at other institutions of higher education and to pursue a career.   This issue may be best addressed after the Court hears testimony on this issue.

However, two points. First, UC does not contest that when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.  Second, UC's argument that the possibility of money damages renders John Doe's damages

not irreparable will be curious if the individual defendants later assert a qualified immunity defense in order to avoid money damages. *See* UC Memo. at 17.

## C. Harm to Third Parties and Public Interest

UC does not contest that the public interest is promoted by the robust enforcement of constitutional rights. *See* UC Memo. at 17-18.

UC's argument that it has a significant interest in maintaining its disciplinary system has two weaknesses. UC Memo. at 18. First, the observation is not particularly helpful, since this interest, no matter how significant, does not mean UC has *carte blanche* to operate outside of constitutional limitations. Second, this observation would be more powerful if UC had actually followed its own rules. The UC rules provide that if a written statement is provided, it must be notarized. (Complaint Ex. A at 29 (emphasis supplied.) In this case, as UC's affidavits established, the ARC Hearing Panel was provided a copy of the statement Jane Roe made to the investigator, *not* a notarized statement. As a result, UC does not appear to be so invested in its disciplinary process so as to insure that it operates as written.

## CONCLUSION

Pursuant to Fed. R. Civil P. 65, this Court should, following a hearing, grant a Preliminary Injunction prohibiting UC from imposing any disciplinary sanctions against John Doe.

Respectfully submitted,

_____/s/ Joshua Adam Engel_____
Joshua Adam Engel (0075769)
Anne Tamashasky (0064393)
ENGEL & MARTIN, LLC
5181 Natorp Blvd., Suite 210
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

11

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been electronically served via the Court's CM/ECF system this November 2, 2016 upon all counsel of record.


_____/s/ Joshua Adam Engel_____
Joshua Adam Engel (0075769)