**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| JOHN DOE, | Case No.     1:16-cv-00987-MRB |
| Plaintiff, | JUDGE MICHAEL R. BARRETT |
| v. | MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I AND II OF THE AMENDED COMPLAINT |
| UNIVERSITY OF CINCINNATI, ET AL | |
| Defendants | |

Plaintiff John Doe respectfully submits this Motion for Partial Summary Judgment on Counts I and II of the Amended Complaint.  Plaintiff specifically seeks summary judgment and the following relief:

- On Count I: a declaratory judgment that the disciplinary process culminating in the June 27, 2016 Hearing was unconstitutional and in violation of Plaintiff's due process rights under the United States Constitution.

- On Count II, a permanent injunction prohibiting the individual defendants from enforcing discipline as a result of unconstitutional June 27, 2016 Hearing.

Plaintiff represents that if the Court grants Summary Judgment on Counts I and II and provides the declaratory and permanent injunctive relief sought, the Plaintiff will not need to proceed on Count III (the count will be dismissed without prejudice) and the Court should set a briefing schedule for fees and costs pursuant to 42 U.S.C. §1988.

**TABLE OF CONTENTS**

STATEMENT OF UNDISPUTED FACTS ...................................................................................... 1

    A.   Background: The Dear Colleague Letter And Investigation Of UC ...................................... 1

    B.   The UC Disciplinary Process ............................................................................................. 3

    C.   The John Doe Matter .......................................................................................................... 4

    D.   Procedural History .............................................................................................................. 7

ARGUMENT ...................................................................................................................................... 7

    A.   Standard ................................................................................................................................ 7

    B.   Qualified Immunity Does Not Preclude Declaratory or Injunctive Relief ........................... 7

    C.   The Sixth Circuit Opinion Means Plaintiff Is Entitled To Summary Judgment ................... 8

        1.   Liberty Interest ................................................................................................................ 8

        2.   Lack of Cross-Examination ............................................................................................ 9

            a.   The Law On Cross-Examination In Student Disciplinary Hearings ........................ 9

            b.   Doe v. University of Cincinnati .............................................................................. 11

            c.   Application to This Case ......................................................................................... 12

CONCLUSION ................................................................................................................................ 13

**STATEMENT OF UNDISPUTED FACTS**

This case arises out of the decision of the University of Cincinnati ("UC") to impose disciplinary sanctions against the Plaintiff in violation of the his Constitutional due process rights.

**A.      Background: The Dear Colleague Letter And Investigation Of UC**

In recent years, and during the period preceding the disciplinary actions against John Doe, there was substantial criticism of UC, both in the student body and in the public media, accusing Syracuse of not taking seriously complaints of female students alleging sexual assault by male students. (Amended Complaint ¶¶17-20, 114(b).)      *Cf. Doe v. Columbia Univ.,* 831 F.3d 46, 57 (2d Cir. 2016)( during the period preceding the disciplinary hearing, there was substantial criticism of the University, both in the student body and in the public media, accusing the University of not taking seriously complaints of female students alleging sexual assault by male students"). The University of Cincinnati is currently under investigation by OCR for its handling of allegations of sexual misconduct. *See* OCR Docket #15-16-2039.[1]

After years of criticism for being too lax on campus sexual assault, at the urging of OCR and other high-ranking officials in the Obama Administration, colleges and universities engaged in a crackdown on alleged perpetrators. On April 11, 2011, OCR sent a "Dear Colleague" letter to colleges and universities. *See* Letter from Office for Civil Rights, U.S. Dep't of Educ. (Apr. 4, 2011) (the "DCL").[2] OCR regulations and guidance required that schools "adopt and publish grievance

---

[1] According to the OCR docket and publicly available records, on November 23, 2015 OCR received a complaint against UC alleging that UC discriminated against students based on sex by failing to promptly and equitably respond to complaints, reports and/or incidents of sexual violence. On February 9, 2016 OCR sent a letter to UC informing UC of the complaint and requesting additional information. Notably, while UC was aware of the allegations against John Doe in September 2015, UC did not inform John Doe that a formal investigation was underway until shortly (10 days) after receiving the letter from OCR. *See infra* Statement of Facts §B.

[2] Available at http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf. The DCL is a "significant guidance document," as defined by the Office of Management and Budget's Final Bulletin for Agency Good Guidance Practices. *See* DCL at 1 n. 1; 72 Fed. Reg. 3432. It did "not add

procedures providing for the prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited." 34 C.F.R. § 106.8(b).  The problem – and the reason UC's efforts to comply with the DCL are not entitled to the traditional deference provided to schools – is that the DCL "was not adopted according to notice-and-comment rulemaking procedures; its extremely broad definition of 'sexual harassment' has no counterpart in federal civil rights case law; and the procedures prescribed for adjudication of sexual misconduct are heavily weighted in favor of finding guilt." *Plummer v. Univ. of Houston*, 860 F.3d 767, 779-80 (5th Cir. 2017) (Jones, J., dissenting).

On September 22, 2017, the Department of Education withdrew the DCL and indicated its intent to issue new guidance "through a rulemaking process that responds to public comment." Letter from Office for Civil Rights, U.S. Dep't of Educ. (September 22, 2017).[3]  In withdrawing the DCL, OCR might have been describing Syracuse's actions in this case: prior actions "may have been well-intentioned, but . . . led to the deprivation of rights for many students—both accused students denied fair process and victims denied an adequate resolution of their complaints." *Id.* at 1-2.  OCR further said:

> Legal commentators have criticized the 2011 Letter . . . for placing "improper pressure upon universities to adopt procedures that do not afford fundamental fairness." As a result, many schools have established procedures for resolving allegations that "lack the most basic elements of fairness and due process, are overwhelmingly stacked against the accused, and are in no way required by Title IX law or regulation."

*Id.* at 1, *quoting Open Letter From Members Of The Penn Law School Faculty:  Sexual Assault Complaints: Protecting Complainants And The Accused Students At Universities*, Feb. 8, 2015; *Rethink Harvard's Sexual*

---

requirements to applicable law, but provide[d] information and examples to inform recipients about how [the Office for Civil Rights] evaluate[d] whether covered entities [were] complying with their legal obligations." DCL at 1 n.l.

[3]Available at https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf.

*Harassment Policy*, Boston Globe (Oct. 15, 2014) (statement of 28 members of the Harvard Law School faculty).

## B.    The UC Disciplinary Process

The UC Student Code of Conduct ("SCOC") governs student behavior and provides for sanctions for violations.[4]  The alleged misconduct by John Doe occurred on September 6-7, 2015.  As a result, his conduct would be covered by the UC Code of Student Conduct that was effective on July 15, 2012 (the policy was, confusingly, filed with the Ohio Legislature on March 11, 2015.)  A copy of the SCOC filed with the Ohio Legislative Services Commission is attached to the Complaint. (Complaint Ex. A, R.1, PageID#42-81.)

When a complaint of sexual misconduct is made, a Deputy Title IX Coordinator or designee will initiate a meeting with the accused student.  A Deputy Title IX Coordinator or designee will begin interviewing witnesses and review relevant evidence. At the conclusion of the investigation, the Deputy Title IX Coordinator prepares an investigatory report which is provided to an Administrative Review Committee ("ARC").  The ARC holds an administrative hearing applying the preponderance of the evidence standard to determine whether the student violated the UC Code of Conduct. While the ARC hearing process limits the ability of students to present a meaningful defense in a number of significant ways, this Appeal centers on the SCOC rules governing the ability of students to question adverse witnesses.  There is no provision in the SCOC to compel the attendance of witnesses.  Cross-examination of witnesses is strictly limited to written questions submitted through the hearing panel chair.  The SCOC does not have any rules governing the admissibility of evidence and the use of hearsay evidence, regardless of the presence of any indicia of reliability, is not only permissible, but

---

[4] The UC Code of Conduct is codified in the Ohio Administrative Code. OAC 3361:40-5-04. According to the Ohio Legislative Service Commission, the UC Code of Student Conduct has been revised a number of times since 2014, with effective dates for new policies in July 2012, September 2015, July 2016 and August 2016.

encouraged.  The SCOC further provides that the ARC may hear from absent witnesses or receive

notarized statements:

> Witnesses are strongly encouraged to be present for hearings. The hearing chair, in
> consultation with the ARC, reserves the right to limit the number of witnesses.
> Witnesses shall be present only when giving testimony. However, if they are unable to
> attend, notarized statements may be submitted.

(Complaint Ex. A at 29, R.1; PageID#70.)  Following, the ARC hearing, a student facing discipline is

permitted to appeal.

## C.     The John Doe Matter

Doe was suspended from UC for events that allegedly occurred beginning on the evening of

September 6-7, 2015.  Doe had met Jane Roe on Tinder, a social media app. They spoke on-line for

two or three weeks until they met face to face. They engaged in small talk and flirtation.  (Aff. of Doe

¶5, R.2, PageID#102.)  The two engaged in sexual intercourse in Doe's apartment.  For purposes of

this Brief, it is sufficient to state that Doe maintains that the encounter was completely consensual,

and Jane Roe maintained that the encounter was not consensual.     (Aff. of Doe ¶5-6, R.2,

PageID#102.)

Jane Roe, over a month later, reported to UC that she had been sexually assaulted by Doe.

On October 30, 2015, Jane Roe was interviewed by the UC Title IX Coordinator.  On November 6,

2015 Jane Roe was again interviewed by the same person.  On December 18, 2015 Jane Roe reported

the alleged assault to the UC Police; the investigation by the UC Police was reported to Cincinnati PD

and closed.  (Aff. of Doe ¶¶7-8, R.2, PageID#102.)

On February 19, 2016 Doe was informed about the allegations. On February 24, 2016 a Title

IX program director conducted a follow-up interview with Jane Roe.  Doe was interviewed on March

7, 2016.  On March 15, 2016 the Title IX program director conducted a follow-up interview with Jane

Roe.  The Title IX program director conducted additional interviews of friends of Jane Roe in

February and March 2016.  (Aff. of Doe ¶¶7-9, R.2, PageID#102.)  Summaries of all interviews, along

with the police report and email correspondence with Doe and Jane Roe, was assembled into an "Investigative File."

On June 27, 2016, UC conducted an ARC Hearing to determine if Doe had violated the Student Code of Conduct. Jane Roe did not appear at the ARC Hearing.  She did not provide a notarized statement. Doe was not told prior to the hearing that Jane Roe would not appear.  (Aff. of Doe ¶¶12, R.2, PageID#103.)  At the ARC hearing, the "Investigative File" was read to the hearing panel.  The investigator and the Title IX coordinators were not present. Instead, the ARC Chair read a summary of the information contained in the Title IX Investigative File. This information included the report made by Jane Doe, the response made by Plaintiff, and the statements of the four people Jane Doe identified as having information about the incident.  (Disciplinary Hrg. Tr. at 7-25, R.16, PageID#176-194.)  The ARC Chair gave the ARC Committee the opportunity to ask questions regarding the report, but the Committee did not have any questions.  (Disciplinary Hrg. Tr. at 28, R.16, PageID#198.)  Such questions would have been impossible to ask or answer because the investigators were not present.  The ARC Chair then explained:

> [ARC CHAIR:] Okay, so the complainant is not here. At this time I would have given them [sic] time to ask questions of the Title IX report. But again, they [sic] are not here. So we'll move on.
>
> So now, do you, as the respondent, [REDACTED], have any questions of the Title IX report?
>
> [DOE]: Well, since she's not here, I can't really ask anything of the report. Is this the time when I would enter in like a situation where like she said this and this never could have happened? Because that's just –
>
> [ARC CHAIR]: You'll have time here in just a little bit to direct those questions. Just --
>
> [DOE]: Then no, I don't have any questions for the report.

(Disciplinary Hrg. Tr. at 28, R.16, PageID#198.)  The ARC Chair explained that if the complainant had been present she would have been able to read into the record what happened and add any

5

additional information. The ARC Chair also explained that Doe would have had the chance to ask questions of the complainant. (Disciplinary Hrg Tr. at 29, R.16, PageID#199.)  There was no physical evidence or witness testimony presented to support the allegations that Doe was guilty.  The only evidence presented against Doe was the hearsay statements in the Investigative File.

The ARC Chair then told Doe he could summarize what happened and include any additional supporting information.  Doe made a statement which acknowledged that he and Jane Roe had different perspectives on what happened.  Doe disputed some of the specific facts from Jane Roe's statement. Doe concluded his statement with the following complaint about his inability to question Jane Roe: "And I would have asked her, I don't know if that can be entered in, at what point did she feel I was hostile?" (Disciplinary Hrg Tr. at 32, R.16, PageID#201.) The ARC Committee then asked Plaintiff several questions. The ARC Chair explained that if the complainant had been there, she also would have had an opportunity to ask questions of Doe. The ARC Chair then read an "impact" statement from Jane Roe.  The hearing concluded with a statement from Doe.  (Disciplinary Hrg Tr. at 36-41, R.16, PageID#206-210.)

Doe was found "responsible," or "guilty," at the hearing. On July 14, 2016, Doe submitted an appeal through the UC appeals process.   (Aff. of Doe ¶14, R.2, PageID#103.)   On September 23, 2016, Doe received a letter from UC indicating that his appeal had been denied and that Doe would be suspended from UC for one year effective December 10, 2016.  (Aff. of Doe ¶¶15-16, R.2, PageID#102-103.)  At the hearing on the Motion for a Preliminary Injunction, Doe explained the effect of the suspension:

> A suspension will cause me substantial, immediate, and continuing damages. Suspension from UC will cause me to be denied the benefits of education at my chosen school, damage my academic and professional reputations, and may affect my ability to enroll at other institutions of higher education and to pursue a career.

(Aff. of Doe ¶¶15-16, R.2, PageID#102-103.)  There is no guarantee that Doe would be permitted to re-enroll in his program after the suspension.  (Nov. 21, 2016 Hrg. at 21, R.28, PageID#403.)  Doe

explained that the graduate program he is in is small and  "very special in the sense that your professors are not just your educators . . . they are also your mentors and your professional contacts . . ." and that a suspension would not only "hinder [him] finishing the program," but would damage his career because "It's not that they are sort of just issuing you a grade. They are -- do they want to introduce you to their friends to work in the professional world and move on from here."  (Nov. 21, 2016 Hrg. at 18, R.28, PageID#400.)

**D.      Procedural History**

On October 7, 2016.  Doe brought this action for a declaratory judgment, violation of 42 U.S.C. §1983 and violation of Title IX.  Doe filed a Motion for a Preliminary Injunction on the same date.  On November 21, 2016, the matter came before the District Court for a hearing on the Motion for a Preliminary Injunction.  (Nov. 21, 216 Tr., R.21, PageID#383-420.)  The decision granting the injunction was issued on November 30, 2016. *Doe v. Univ. of Cincinnati*, 223 F. Supp. 3d 704 (S.D.Ohio 2016).

A Notice of Appeal was filed on December 6, 2016.  (R.22, PageID#275.)  On November 25, 2017, the Sixth Circuit issued a decision affirming the grant of a preliminary injunction. *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017).

**ARGUMENT**

**A.      Standard**

Summary judgment is appropriate if, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact for trial. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B.      Qualified Immunity Does Not Preclude Declaratory or Injunctive Relief**

Plaintiff, in this Motion, seeks non-monetary relief, specifically injunctive and declaratory relief prohibiting the individual defendants from enforcing discipline as a result of unconstitutional

disciplinary process in the June 27, 2016 Hearing. This relief is not affected by the claim of qualified immunity. *See Smith v. Leis*, 407 F. App'x 918, 930 (6th Cir. 2011) ("[A] court could award both declaratory and injunctive relief in an action against a defendant protected by qualified immunity."); *Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996) ("[I]mmunity only precludes claims for monetary damages against officials in their individual capacities, and not claims for injunctive or declaratory relief.").

**C.     The Sixth Circuit Opinion Means Plaintiff Is Entitled To Summary Judgment**

UC students facing discipline must be afforded the opportunity to defend, enforce or protect their rights through presentation of their own evidence, confrontation of adverse witnesses, and oral argument. *Goldberg v. Kelly*, 397 U.S. 254 (1970).  In determining whether UC provided constitutionally adequate due process, the competing interests of the governmental institution and the individual must be balanced.[5]  *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews,* 424 U.S. at 355 *quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

**1.     Liberty Interest**

It is well established that Plaintiff is entitled to due process in the disciplinary proceedings held at UC.  Numerous federal courts have held that the Due Process Clause is implicated by higher education disciplinary decisions. *See Doe v. Miami Univ.,* 882 F.3d 579, 599 (6th Cir.2018) ("Procedural due process is "implicated by higher education disciplinary decisions."), *citing Doe v. Univ. of Cincinnati,* 872 F.3d at 399; *Flaim v. Med. College of Ohio*, 418 F.3d 629 (6th Cir. Ohio 2005).

---

[5] The three factors set forth in *Mathews v. Eldridge*: "(1) the nature of the private interest affected -- that is, the seriousness of the charge and potential sanctions, (2) the danger of error and the benefit of additional or alternate procedures, and (3) the public or governmental burden were additional procedures mandated." *See Ingraham v. Wright*, 430 U.S. 651, 676 (1977) (applying *Mathews*). The amount of process due will vary according to the facts of each case and is evaluated largely within the framework laid out by the Supreme Court in *Mathews*.

2.      **Lack of Cross-Examination**

Although the Amended Complaint raises a number of due process issues associated with the

UC disciplinary process, the Court need not address those claims because Plaintiff is entitled to

summary judgment on the grounds that he was denied the opportunity to effectively cross-examine

adverse witnesses.  In this case, the undisputed fact is that the alleged victim never testified at the ARC

Hearing. This Court found that Plaintiff's constitutional rights were violated because he did not have

the opportunity to cross-examine this adverse witness.  In granting the motion for a preliminary

injunction this Court said:

> Plaintiff was effectively denied the right to cross-examination because he was not
> notified in advance of the hearing that Jane Roe would not be present at the ARC
> Hearing. It was plain at the hearing that Plaintiff intended to ask certain questions, but
> because Jane Roe was not present at the hearing, he was not able to ask those
> questions.

*Doe v. Univ. of Cincinnati*, 223 F. Supp. 3d at 711.

a.      **The Law On Cross-Examination In Student Disciplinary Hearings**

Plaintiff, prior to the Sixth Circuit's opinion in this case, had the clearly established right to

confront adverse witnesses when the information supplied by those witnesses is the reason for the

adverse action and there is a question of credibility to be resolved by the finder of facts.[6] *Goldberg v.*

*Kelly*, 397 U.S. 254, 269 (1970); *Winnick v. Manning*, 460 F.2d 545 (2d Cir. 1972); *Flaim v. Med. Coll. of*

*Ohio*, 418 F.3d 629 (6th Cir. 2005).[7]

---

[6] Important:  Plaintiff is *not* claiming an unlimited right to cross-examination in school disciplinary
proceedings.  Rather, the right claimed in limited to cases where there are disputed facts and the
witnesses relied upon provide the evidence for the decision resolving the dispute.

[7] In *Flaim* the student was convicted of a felony, which was enough to justify an adverse action by the
school.  As a result, as the Sixth Circuit observed, additional process from confrontation of the accuser
would have provided "no benefit to *Flaim* or any reduced risk of error." 418 F.3d at 639-640.

The Sixth Circuit recently reaffirmed the viability of the language in *Flaim* and *Winnick* supporting the
right to cross-examination where issues of credibility are raised.  *Doe v. Cummins*, 6th Cir. No. 16-3334,
2016 U.S. App. LEXIS 21790, at *26 (Dec. 6, 2016) ("Although due process may require a limited

In *Goldberg*, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires an evidentiary hearing before a recipient of certain government welfare benefits could be deprived of such benefits. Of relevance to the issue in this case, the Court held that while there is no right to a formal trial, due process requires an opportunity for the aggrieved person to confront and cross-examine adverse witnesses. 397 U.S. at 269-270. The Court said, "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."

Consistent with *Goldberg*, the Sixth Circuit has previously observed that in certain school disciplinary cases the due process guarantees of the constitution require some ability of accused students to confront their accusers. In *Flaim*, the court explained, "[s]ome circumstances may require the opportunity to cross-examine witnesses, though this right might exist only in the most serious of cases." 418 F.3d at 636.[8] The *Flaim* court relied upon the Second Circuit's decision in *Winnick*. *Winnick v. Manning*, 460 F.2d 545 (2d Cir. 1972). In *Winnick*, the Second Circuit held that there was no requirement that a student be able to cross-examine a witness whose testimony is not determinative to the outcome of the case. 460 F.2d at 549. But, significantly, the *Winnick* court noted, "if this case had resolved itself into a problem of credibility, cross-examination of witnesses might have been essential to a fair hearing." *Id.* at 550. The Sixth Circuit,[9] in *Cummins,* cited to both recently cited to

---

ability to cross-examine witnesses in school disciplinary hearings where, like here, credibility is at issue, *see Flaim*, 418 F.3d at 641 *citing Winnick*[, 460 F.2d at 549-50].").

[8] *Flaim* illustrates that there is no need for cross-examination unless credibility of the witnesses is important to the determination of a violation of school rules. In *Flaim* the student was convicted of a felony, which was enough to justify an adverse action by the school. As a result, additional process from confrontation of the accuser would have provided "no benefit to Flaim or any reduced risk of error." 418 F.3d at 639-640.

[9] The First Circuit has, consistent with the Sixth Circuit, observed that a school had complied with constitutional requirements by providing a student "the opportunity to cross-examine his accusers as to the incidents and events in question." *Gorman v. University of Rhode Island*, 837 F.2d 7, 16 (1st Cir.1988). The *Gorman* court further observed that while there is no right to "unlimited" cross-

10

both *Flaim* and *Winnick* for the proposition that "due process may require a limited ability to cross-examine witnesses in school disciplinary hearings where . . . credibility is at issue." *Doe v. Cummins*, 662 F. App'x 437, 448 (6th Cir. 2016). *See also Doe v. Ohio State Univ.*, No. 2:15-CV-2830, 2016 U.S. Dist. LEXIS 154179, *10 (S.D. Ohio Nov. 7, 2016) (holding that where a disciplinary proceeding depends on a choice between believing an accuser and an accused cross-examination is not only beneficial, but essential to due process).

### b.        Doe v. University of Cincinnati

In *Doe v. University of Cincinnati*, *supra*,  the Sixth Circuit explicitly adopted the *Winnick-Flaim* approach.  The court held, "Accused students must have the right to cross-examine adverse witnesses 'in the most serious of cases.'"  2017 U.S. App. LEXIS 18458, at *14, *quoting Flaim*, 418 F.3d at 636. The court in *Doe v. Univ.. of Cincinnati* considering the facts of this case, observed that as a general rule, cross-examination is not required to satisfy due process in an expulsion proceeding. However, the Sixth Circuit noted that this was not the *full and compete* statement of the law:

> "The right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings." [*Winnick v. Manning*, 460 F.2d 545, 549 (2d Cir. 1972)].  However, general rules have exceptions, and "the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." [*Goss v. Lopez*, 419 U.S. 565, 578 (1975)]. Goss, 419 U.S. at 578 (citation and parenthetical omitted). The more [serious the deprivation, the more demanding the process. And where the deprivation is based on disciplinary misconduct, rather than academic performance, "we conduct a more searching inquiry." *Flaim*, 418 F.3d at 634.

2017 U.S. App. LEXIS 18458, at *13-14.

In *Doe v. University of Cincinnati*,  the court observed that in applying the *Mathews* test, the focus should be on the risk of erroneous deprivation under the current procedures used and the value of any additional or substitute procedural safeguards.  Accordingly, when there is an absence of cross-

---

examination, due process requires that some cross-examination to permit an accused to "elicit[] the truth about the facts and events in issue."

11

examination the process should be evaluated on its impact on the entire process, not necessarily solely

on whether the absence of cross-examination had an adverse impact on the accused student. In other

words, the absence of cross-examination violates the due process rights of accused students because

it impacts the reliability of the entire process. The court said:

> UC assumes cross-examination is of benefit only to Doe. In truth, the opportunity to
> question a witness and observe her demeanor while being questioned can be just as
> important to the trier of fact as it is to the accused. . . . Few procedures safeguard
> accuracy better than adversarial questioning.

2017 U.S. App. LEXIS 18458, at *16 (citations omitted). The court further elaborated on the benefit

of cross-examination to the entire process:

> But if a university's procedures are insufficient to make "issues of credibility and
> truthfulness . . . clear to the decision makers," that institution risks removing the wrong
> students, while overlooking those it should be removing. *See Furey v. Temple Univ.*, 884
> F. Supp. 2d 223, 252 (E.D. Pa. 2012). "The concern would be mostly academic if the
> disciplinary process were a totally accurate, unerring [*20] process, never mistaken
> and never unfair. Unfortunately, that is not the case, and no one suggests that it is."
> [*Goss v. Lopez*, 419 U.S. 565, 579-580 (1975)]. Cross-examination, "the principal means
> by which the believability of a witness and the truth of his testimony are tested," can
> reduce the likelihood of a mistaken exclusion and help defendants better identify those
> who pose a risk of harm to their fellow students. See *Newsome v. Batavia Local Sch. Dist.*,
> 842 F.2d 920, 924 (6th Cir. 1988) (citation omitted).

2017 U.S. App. LEXIS 18458, at *19-20.

### c.      Application to This Case

In this case, the undisputed facts are that the alleged victim never appeared at the

administrative hearing. Plaintiff's due process rights were violated because he was never provided any

opportunity to confront his accuser and the ARC Hearing Panel made a credibility determination. The

Sixth Circuit said that a school deciding a case where credibility is at issue "without seeing or hearing

from [the alleged victim] at all" is "disturbing and . . . a denial of due process." 872 F.3d 393 at *18.

No detailed discussion is necessary; no new relevant facts have been uncovered – or are likely to be –

that would change the view of the Sixth Circuit or this Court. Moreover, the Sixth Circuit recently re-

affirmed the holding of *Doe v. Univ. of Cincinnati* in *Doe v. Miami Univ, supra.* In *Doe v. Miami Univ.*, the

12

Sixth Circuit said, "if the credibility of an alleged victim is at issue, the university must provide a way for the adjudicative body to evaluate the victim's credibility and 'to assess the demeanor of both the accused and his accuser.'" 882 F.3d at 600, *quoting Doe v. Univ. of Cincinnati*, 872 F.3d at 406. Accordingly, Plaintiff is entitled to summary judgment.

## CONCLUSION

The Motion for Partial Summary Judgment should be granted.  The Court should provide the following relief:

- On Count I: a declaratory judgment that the disciplinary process culminating in the June 27, 2016 Hearing was unconstitutional and in violation of Plaintiff's due process rights under the United States Constitution.

- On Count II, a permanent injunction prohibiting the individual defendants from enforcing discipline as a result of unconstitutional June 27, 2016 Hearing.

If the Court grants the relief sought, Plaintiff will seek to dismiss Count III of the Amended Complaint without prejudice.  Plaintiff respectfully suggests that the Court should set a briefing schedule for submission of a fee request pursuant to 42 U.S.C. §1988.

.

Respectfully submitted,

_____/s/ Joshua Adam Engel_____
Joshua Adam Engel (0075769)
Anne Tamashasky (0064393)
ENGEL AND MARTIN, LLC
4660 Duke Dr., Ste 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

13

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been electronically served via the Court's CM/ECF system March 28, 2018 upon all counsel of record.

_____/s/ Joshua Adam Engel_____
Joshua Adam Engel (0075769)

14