UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOHN DOE, | : Case No. 1:16-cv-00987 |
| Plaintiff, | : Judge Michael R. Barrett |
| v. | : |
| UNIVERSITY OF CINCINNATI, et al., | : DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| Defendants. | : |

Defendants University of Cincinnati ("UC"), Aniesha Mitchell, and Juan Guardia (collectively "Defendants") submit this Response in Opposition to Plaintiff's Motion for a Partial Summary Judgment. (Doc. 40, "Motion") This response is supported by the following memorandum, the attached declaration, and the other record evidence.

## I.   INTRODUCTION

John Doe's Motion should be denied as there are at least genuine issues of material fact relating to Counts I and II of his Amended Complaint. Counts I and II both assert a claim that Defendants violated Mr. Doe's procedural due process rights. As this Court has noted, Plaintiff has represented that he is only pursuing declaratory and injunctive relief. (Doc. 42 at Page ID 569; Doc. 40 at Page ID 525) This Court has dismissed Plaintiff's procedural due process claim based on allegations of bias, but allowed Plaintiff's procedural due process claim to proceed based on "Defendants' failure to provide him with an opportunity to cross-examine Jane Roe." (Doc. 42 at Page ID 563) This Court has also dismissed Plaintiff's Count III. (*Id.* at Page ID 568)

As such, the only claim at issue is Plaintiff's claim that Defendants violated his procedural due process rights relating to Jane Roe's non-attendance at the disciplinary

1

hearing, resulting in Plaintiff's entitlement to a declaratory judgment and a permanent injunction.  Because there are at least genuine issues of material fact as to whether Jane Roe's absence caused any legal prejudice to Plaintiff such that he can support an ultimate finding that his procedural due process rights were violated, Plaintiff's motion for partial summary judgment should be denied.

## II.     FACTS

### A.     Facts and Procedure of John Doe's Disciplinary Matter

On September 28, 2015, Jane Roe reported to the UC Title IX Office that she had been sexually assaulted by a fellow UC student.  (Doc. 11-1 at Page ID # 143)  On October 30, 2015, Jyl Shaffer, UC's Title IX Coordinator at that time, interviewed Jane Roe regarding her complaint.  (*Id*.)  Ms. Shaffer documented the allegations and included her five pages of notes in the Title IX investigation file.  (*Id*.)

On November 6, 2015, Ms. Shaffer interviewed Jane Roe again.  (*Id*.)  Ms. Shaffer again documented that interview, and included the additional five pages of notes she took in the Title IX investigation file.  (*Id*.)  On December 18, 2015, Jane Roe reported to the UC Police Department that she had been sexually assaulted by John Doe at his residence during the late night/early morning hours of September 6-7, 2015.  (*Id*. at Page ID # 144)  A copy of that report was included in the Title IX investigation file.  (*Id*.)

On February 19, 2016, Remy Barnett, the Program Coordinator for the UC Title IX Office at that time and the Title IX investigator assigned to this complaint, notified John Doe via email that a complaint of sexual assault had been filed against him by Jane Roe and that, pursuant to the UC Title IX Grievance Procedure for Students and Third Parties, the UC Title IX Office was investigating the complaint.  (*Id*.)  That notification

2

also advised John Doe that he was permitted to have an advisor of his choice with him throughout the process, but that advisors are not permitted to speak on the student's behalf throughout the process. (*Id.*) The notice also advised John Doe that he could provide the names of witnesses and evidence that he believed was relevant to the complaint, but that he was under no obligation to do so. (*Id.*) John Doe was also advised that if he did not participate in the investigation, he could still provide information during the Judicial Affairs process if the complaint was forwarded to the Office of University Judicial Affairs for adjudication under the Student Code of Conduct. (*Id.*) The notice concluded by encouraging John Doe to review the Student Code of Conduct and the Title IX Grievance Procedure, and to contact Ms. Barnett if he had any questions. (*Id.*)

The February 19, 2016 correspondence also attached a copy of Jane Roe's complaint. (*Id.*) In addition to including specifics about the incident, including the date, location, and specific acts that Jane Roe alleged occurred without her consent, the complaint also provided a link to the UC Title IX Grievance Procedure for Students and Third Parties, a link to the full UC Code of Conduct, and UC's definitions for consent and sexual/gender-based violence. (*Id.* at Page ID # 144-45)

John Doe responded to the notice that evening, initially denying that he knew Jane Roe. (*Id.*) However, John Doe later acknowledged that he remembered Jane Roe, and asked Ms. Barnett about scheduling a time to have a conversation about the events between him and Jane Roe. (*Id.*)

On February 24, 2016, Ms. Barnett interviewed Jane Roe as part of the investigation. (*Id.*) Similar to the previous interviews, Ms. Barnett documented the

interview and included those notes (approximately five more pages) in the Title IX investigation report. (*Id.*) Ms. Barnett followed up with Jane Roe on March 15, 2016, to clarify a few of Jane Roe's prior statements. (*Id.*) Ms. Barnett's notes of that interview were similarly included in the Title IX investigation report. (*Id.*)

On March 4, 2016, Ms. Barnett contacted John Doe to schedule time for an in-person interview. (*Id.*) On March 7, 2016, Ms. Barnett and Ms. Shaffer met with John Doe for an in-person interview. (*Id.*) Both Ms. Barnett and Ms. Shaffer documented their interview, including seven pages of notes of the interview in the Title IX investigation file. (*Id.*) During the investigation, four individuals identified by Jane Roe as persons with knowledge relevant to the investigation were also interviewed. (*Id.*) Notes of those interviews were also included in the Title IX investigation file. (*Id.*) On April 1, 2016, Jane Roe emailed Ms. Barnett with "edits for the file." (*Id.*) A copy of that email was included in the Title IX investigation file. (*Id.*)

On April 11, 2016, Aniesha Mitchell, the Director of the Office of Student Conduct and Community Standards (formerly known as University Judicial Affairs), sent John Doe a letter advising him that the Title IX investigation was complete and attempting to schedule a procedural review. (Doc. 11-2 at Page ID # 147) The procedural review was scheduled for April 15, 2016. (*Id.*) During the procedural review, John Doe was given the opportunity to discuss the Student Code of Conduct, review the incident report, and review all other information related to the allegations that was available at that time. (*Id.*) On April 18, 2016, Ms. Mitchell gave John Doe on-line access to a complete copy of the Title IX investigation file. (*Id.*) John Doe confirmed that he was able to download the file that evening. (*Id.*)

4

Eventually, after confirming the parties' availability and the availability of enough students and faculty for an Administrative Review Committee ("ARC") Hearing, Ms. Mitchell sent letters to John Doe and Jane Roe via email on May 27, 2016, advising them that an ARC Hearing was scheduled for June 27, 2016, at 10:00 a.m. (*Id.* at Page ID # 147-48)  The parties were advised that they could submit a list of witnesses for the hearing and additional evidence by June 10, 2016. (*Id.* at Page ID # 148)  The parties were advised that the list of witnesses and any other submitted evidence would be provided to both parties by June 20, 2016. (*Id.*)

The ARC Hearing was held on June 27, 2016. (*Id.*)  Neither party submitted a list of any witnesses nor did either party submit additional evidence prior to the hearing. (*Id.*)  Jane Roe was not present at the ARC Hearing, but she did submit a statement to the ARC Hearing panel. (*Id.*)

During the hearing, the chair of the ARC Hearing panel reviewed the contents of the Title IX investigation report. (*Id.*)  John Doe was then given an opportunity to give his version of the events as well as provide any additional supporting information. (*Id.*)  John Doe pointed out a number of instances where he specifically disagreed with Jane Roe's version of the events. (*Id.*)  The ARC Hearing panel then asked John Doe four questions, one of which was just to clarify John Doe's status as a graduate student. (*Id.*)  The other questions were focused on asking John Doe to clarify how he received consent for the sexual activity between him and Jane Roe. (*Id.*)

After this, Jane Roe's statement was read. (*Id.* at Page ID # 149)  To conclude the hearing, John Doe was permitted to give a closing statement to the panel. (*Id.*)  The

ARC Hearing panel retired to deliberate, thereafter recommending that John Doe be found responsible for violating the UC Student Code of Conduct.  (*Id.*)

The ARC panel's written determination of responsibility stated:  "We believe the respondent is responsible based on his own account of the events that evening and the evidence provided."  (Aniesha Mitchell Declaration at ¶ 2, Ex. 1)  This finding is supported by several of Plaintiff's statements at the ARC hearing.  For example, the following colloquy occurred:

> [ARC Chair]:  So, how did you go about getting consent for this encounter?  What did consent, that night, mean to you?
>
> [Plaintiff]:  Well, there was no like, "Is it okay if we have sex?" That didn't happen.
>
> [ARC Chair]:  Sure.
>
> [Plaintiff]:  I can say that.  That initial encounter, I kind of take it on a, like a point-by-point basis.  Like I'll move from one sector to like kissing for instance.  We kiss and she kissed back.  Like there's no pushback, so move forward. And then I started feeling her breasts and hold her more embracingly [sic].  There was no, there was no pushback then.  Kind of that kind of pattern.
>
> [ARC Chair]:  Okay.
>
> [Plaintiff]:  The only point at which there was pushback was at the point where we were both fully declothed [sic] and I said, "I'm going to get a condom," and she said, "Hold on, wait a minute, just stop."  And then I stopped and we sat down and had a conversation.
>
> [ARC Chair]:  Okay.  Could you explain, in depth, what that conversation was like, just to the best of your knowledge or recollection?
>
> [Plaintiff]:  The conversation was along the lines of, well, me asking questions, why she didn't want to continue or why she had – I wasn't upset, but I was, I was trying to understand

6

> why she had let it escalate to this point and then wanted to stop then and there.
>
> **********
>
> [Plaintiff]: Yeah. We had a discussion and she couldn't, she really didn't give any king of answer as to why, she just kind of wanted to not move forward, I guess, but she wasn't, she wasn't being respondent [sic] to that, and then she just moved forward with it anyway.

(Doc. 16 at Page ID 202-204)

In his closing statement, Plaintiff stated: "Well, I can't deny that she feels this way. I don't how it lead [sic] up to this, to be completely honest. She – I'm just kind of stupefied about how there's such a different perspective of that night. Like, I don't understand. I feel bad that I didn't fervently get consent from her. And I feel bad that she didn't just say something to stop. That's really all I can say." (*Id*. at Page ID 210)

On July 8, John Doe submitted a four-page appeal, and on July 14 and 15, 2016, he submitted an updated seven-page appeal and three character reference letters. (*Id*.) On September 22, 2016, Rachel Jay Smith, the University's Appeals Administrator, rejected John Doe's appeal of the finding of responsibility, but recommended a lessening of John Doe's sanction to a one-year suspension to begin at the end of the Fall 2016 semester and conclude at the end of the Fall 2017 semester. (*Id*.) On September 23, 2016, Juan Guardia, the Assistant Vice President and Dean of Students, accepted the Appeals Administrator's recommendations. (*Id*.)

## III.   ARGUMENT

### A.   There are at least genuine issues of material fact as to whether Jane Roe's absence caused any legal prejudice to Plaintiff.

"In order to prevail on a procedural due process challenge, Plaintiff must not just show faulty procedure; he must also show prejudice." *Jahn v. Farnsworth*, 33 F. Supp.

7

3d 866, 873 (E.D. Mich. 2014), *aff'd*, 617 F. App'x 453 (6th Cir. 2015) (citing *Graham v. Mukasey,* 519 F.3d 546, 549 (6th Cir. 2008)).  "The merits of a procedural due process claim do not need to be examined if there is no demonstration of prejudice." *Id.* at 873-74 (citing *Graham*, 519 F.3d at 549).  "In order to establish prejudice, Plaintiff 'must show that the due process violations led to a substantially different outcome from that which would have occurred in the absence of those violations.'" *Id.* at 874 (quoting *Graham*, 519 F.3d at 549).

     The issue of prejudice has been confirmed as a necessary element by many courts throughout the nation.  *See Jahn*, 33 F. Supp. 3d at 874 ("Multiple courts have determined that an admission of guilt is relevant to determine substantial prejudice.") (citing multiple cases); *see also Joseph v. St. Charles Par. Sch. Bd.*, 736 F.2d 1036, 1038 (5th Cir. 1984) ("[T]o justify relief for a procedural due process failure in an administrative proceeding, there must be a showing of substantial prejudice."); *Hickey v. Chadick*, No. 2:08-CV-0824, 2010 WL 11484581, at *14 (S.D. Ohio Aug. 5, 2010) ("But in order to make out a claim for procedural due process, plaintiffs still have to demonstrate prejudice.") (citing numerous cases).

     In a reply memorandum, Plaintiff will likely contend that the *Jahn* court's citation to *Graham* is inapposite because *Graham* cited to *Warner v. Ashcroft*, 381 F.3d 534 (6th Cir. 2004), which is an immigration case.  First, there is no indication from the Sixth Circuit in either *Graham* or *Warner* that it intended to limit the need to show prejudice under a due process claim to just immigration cases.  In fact, the Sixth Circuit has cited to *Graham* for the same proposition in cases dealing with much different subject matter.  *See Shoemaker v. City of Howell*, 795 F.3d 553, 563 (6th Cir. 2015).

Further, and perhaps more importantly, it is undisputed that the "prejudice" showing is necessary in immigration cases and also in criminal cases involving allegations of failure to disclose exculpatory evidence. *See Strickler v. Greene*, 527 U.S. 263, 281–82 (1999) ("There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.").

Of course, immigration cases involve the potential that an individual will be removed from the country and criminal cases involve the potential that an individual will lose his freedom. It stands to reason that in this case, where the potential sanctions are much less, that a plaintiff must similarly show that the purported due process violation actually caused the prejudice (*i.e.*, finding of responsibility) of which he complains. It also stands to reason that basic causation requirements necessitate that a plaintiff must be able to show that the purported due process violation actually resulted in the deprivation (*i.e.*, prejudice) which the plaintiff wants undone. *See, e.g., Horn by Parks v. Madison Cty. Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994) ("[A] violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury.").

Plaintiff will also likely try to distinguish the above school discipline cases, including *Jahn*, on the basis that many of those cases involved an individual admitting to the conduct at issue. Defendants are not contending that Plaintiff admitted to the violation nor are Defendants contending that everyone who sat through the ARC panel hearing would necessarily have found Plaintiff responsible. But that is not the issue.

9

This ARC panel did find him responsible based on his own statements, and there is at least reasonable support in the transcript of that ARC hearing for that finding.

At the very least, there is a genuine issue of material fact which should be resolved by a jury regarding whether Jane Roe's absence caused any legal prejudice to Plaintiff such that he can support an ultimate finding that his procedural due process rights were violated. This is supported by the fact that courts are not meant to be in the business of acting as a "super-appeals court for sexual misconduct cases." *Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 313 (D.R.I. 2016); *see also Doe v. Phillips Exeter Acad.*, No. 16-CV-396-JL, 2016 WL 6651310, at *2 (D.N.H. Nov. 10, 2016); ("In effect, these counts seek appellate review of the investigator's factual findings and conclusions. That is not the court's role in . . . cases such as this."); *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 14 (D. Me. 2005) (stating that it is not the court's task "to make an independent determination about" the underlying events).

As mentioned above, the ARC panel expressly stated in its finding of responsibility that it found Plaintiff responsible for violating the Student Code of Conduct based upon Plaintiff's own statements at the ARC hearing. *See Chalmers v. Lane*, No. CIV.A.3:03-CV-1268-B, 2005 WL 169990, at *9 (N.D. Tex. Jan. 25, 2005) ("Because Chalmers failed to present evidence that the outcome of the disciplinary proceedings would have been different had Defendants not committed the due process violations he alleges, Chalmers has not met his burden of demonstrating that he was substantially prejudiced by any alleged due process violations.").

At the very least, Plaintiff's contention that Jane Roe's absence from the disciplinary hearing resulted in an unconstitutional finding of responsibility should be

10

put to a jury in light of the ARC panel's statement that it found Plaintiff responsible based upon his own statements. This Court should not act as a super-appeals court and find that because Jane Roe was not present at the hearing that it would have been impossible for the ARC panel to have found Plaintiff responsible, especially in light of the fact that the ARC panel has expressly stated that it found him responsible based upon his own statements at the hearing.

Plaintiff will also likely argue that the "prejudice" inquiry is irrelevant to the due process analysis, relying upon *Carey v. Piphus*, 435 U.S. 247 (1978). But *Carey* actually confirms that it is essential to the analysis. The *Carey* Court began its analysis citing to the court of appeals' statement that "if petitioners can prove on remand that respondents would have been suspended even if a proper hearing had been held, then respondents will not be entitled to recover damages to compensate them for injuries caused by the suspensions." *Id.* at 260. The *Carey* Court noted that the parties did not disagree with the court of appeals' conclusion and stated, "Nor do we." *Id.* The *Carey* Court, thus, agreed that a plaintiff had no cause of action relating to the suspension where the suspension was proper. Rather, the *Carey* Court's focus was on whether mental and emotional distress damages are recoverable if they are incurred and flow directly from the due process violation(s) itself, not the ultimate deprivation.

"Although mental and emotional distress caused by the denial of procedural due process may be compensable under section 1983, damages should not be presumed to flow from every deprivation of due process." *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1352 (6th Cir. 1992) (citing *Carey,* 435 U.S. at 262–63). "Moreover, where a deprivation is justified but the procedures are deficient, the distress a person feels may

11

be attributable to the justified deprivation rather than to deficiencies in procedure." *Id*. (citing *Carey*, 435 U.S. at 263). "Consequently, a plaintiff is required 'to convince the trier of fact that he actually suffered distress <u>because of the denial of procedural due process itself</u>.'" *Id*. (quoting *Carey*, 435 U.S. at 263) (emphasis added). "[T]he injury caused by a justified deprivation, including distress, is <u>not</u> properly compensable under § 1983." *Carey*, 435 U.S. at 263 (emphasis added).[1]

In other words, *Carey* stands for the proposition that Plaintiff might be able to recover mental and emotional distress damages or nominal damages "because of the denial of procedural due process itself," not because of a justified finding that he violated the University's Code of Conduct. However, as this Court has noted, "Plaintiff has represented that he is only pursuing declaratory and injunctive relief." (Doc. 42 at Page ID 569) If Plaintiff was seeking only to recover mental and emotional distress damages or nominal damages, perhaps this matter would be in a different posture. But he is not. Rather, he is asking that this Court permanently set aside the ARC panel's finding because of Jane Roe's non-attendance, despite the fact that that the ARC panel's finding of responsibility was based on Plaintiff's own account of the events.

Because there are at least genuine issues of material fact as to whether Jane Roe's absence caused any legal prejudice to Plaintiff such that he can support an ultimate finding that his procedural due process rights were violated, Plaintiff's motion for partial summary judgment should be denied.

---

[1] The Supreme Court's *Zinermon v. Burch* decision also did not reject Defendants' argument regarding the need to show prejudice. The *Zinermon* decision notes that *Carey* "went on to say . . . that in cases where the deprivation would have occurred anyway, and the lack of due process did not itself cause any injury (such as emotional distress), the plaintiff may recover only nominal damages." 494 U.S. 113 n. 11 (1990) (citing *Carey*, 435 U.S. at 264).

12

### B. The Sixth Circuit's opinion does not foreclose this matter from proceeding.

Many of the facts in this matter have been the subject of briefing on a motion for preliminary injunction, briefing before the Sixth Circuit Court of Appeals, and briefing on a motion to dismiss. As this Court is aware, the primary issue underlying the motion for preliminary injunction and the Sixth Circuit Court of Appeals' decision is the fact that Jane Roe – the student who accused Plaintiff of sexual misconduct – was not present at the disciplinary hearing to be questioned by the ARC panel or Plaintiff. Based upon this fact, this Court held that Plaintiff was likely to succeed on the merits of his procedural due process claim, and the Sixth Circuit agreed.

However, one fact that was not the subject of briefing nor was it discussed in the context of this Court's and the Sixth Circuit's decisions is that the ARC panel's decision that Plaintiff was responsible for violating the University's sexual misconduct policy was based on Plaintiff's own statements at the ARC panel hearing. Instead, based upon the record evidence before the Sixth Circuit on appeal of the preliminary injunction, the Sixth Circuit concluded that "the Committee's finding of responsibility necessarily credits Roe's version of events and her credibility." *Doe v. Univ. of Cincinnati*, 872 F.3d at 401. But that is not the full picture. As the ARC panel's written finding demonstrates, it found Plaintiff "responsible based on his own account of the events that evening and the evidence provided." (Mitchell Decl. at ¶ 2, Ex. 1)

With this additional evidence, the Sixth Circuit's "limited holding" in *Doe v. University of Cincinnati*, 872 F.3d 393, 405 (6th Cir. 2017) confirms that this matter is not foreclosed from proceeding based solely on the fact that Jane Roe was not present at the ARC hearing. As the Sixth Circuit stated, "[c]ross-examination may be unnecessary

13

where the University's case does not rely on testimonial evidence from the complainant."[2] *Id.* at 405 (citation and internal quotation omitted). The Sixth Circuit also stated: "nothing in our decision jeopardizes UC's ability to rely on hearsay statements" and "UC may still open the hearing with a Title IX report summary that includes the parties' 'out-of-court' statements, and the ARC panel may still rely on those statements in deciding whether Doe is responsible for violating the Code of Conduct—it need not demand that Roe and Doe recite the evening's events from memory." *Id.* at 405 (citations omitted). As mentioned above, these statements were made in the context that the Sixth Circuit's opinion provided a "limited holding." *Id.*

In other words, the University is permitted to rely on Jane Roe's "out-of-hearing" statements to decide whether Plaintiff is responsible for violating the Code of Conduct and cross-examination may not be necessary where the hearing panel's decision is not based solely on Jane Roe's testimonial evidence.[3] That is what appears to have happened here. The ARC panel found Plaintiff "responsible based on his own account of the events that evening and the evidence provided." (Mitchell Decl. at ¶ 2, Ex. 1)

If Plaintiff's motion is granted, it would mean that in any case involving similar "claims of alleged sexual assault or harassment . . . [w]here perpetrators often act in private" (*Doe v. Univ. of Cincinnati*, 872 F.3d at 406) and where the alleged victim does not attend the disciplinary hearing to be questioned, colleges and universities are not

---

[2] Disciplinary matters are not the "University's case." Hearing panels are boards of inquiry (*see Doe v. Cummins*, 662 F. App'x 437, 439 (6th Cir. 2016)); there is no prosecutor nor is there any member of administration that acts in a prosecutor-like function to advocate for a "conviction."

[3] In closing, the Sixth Circuit stated: "we emphasize that UC's obligations here are narrow: it must provide a means for the ARC panel to evaluate an alleged victim's credibility, not for the accused to physically confront his accuser." *Id.* at 406. But where the hearing panel's decision was based on Plaintiff's own statements, the hearing panel's need to evaluate the alleged victim's credibility must considerably lessen.

14

permitted to find the accused responsible based on the accused's own statements at the hearing.  Again, Defendants are not saying that everyone who sat through the disciplinary hearing at issue (or who has reviewed the transcript of the hearing) would have come to the same conclusion as this disciplinary panel, but such a holding would ignore the reality that sometimes the accused's own statements provide enough for a disciplinary hearing panel to conclude that the accused has violated the code of conduct. At the very least, there are genuine issues of material fact as to whether this is such a case, and that determination should be submitted to a jury.

## IV.  CONCLUSION

For each and all of the foregoing reasons, Defendants request that this Court deny Plaintiff's Motion for Partial Summary Judgment.

Respectfully submitted,

MICHAEL DEWINE
Attorney General of Ohio

By:   /s/ Doreen Canton
Doreen Canton (0040394)
Evan T. Priestle (0089889)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH  45202
Tel:  (513) 381-2838
Fax:  (513) 381-0205
canton@taftlaw.com
epriestle@taftlaw.com

Attorneys for Defendants
University of Cincinnati, Aniesha
Mitchell, and Juan Guardia

22277079.1

<u>CERTIFICATE OF SERVICE</u>

I certify that on April 30, 2018, I filed Defendants' Response in Opposition to Plaintiff's Motion for Partial Summary Judgment with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all registered parties.

<u>/s/ Doreen Canton       </u>

22277079.1