IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOHN DOE, | Case No. 1:16-cv-00987-MRB |
| Plaintiff, | JUDGE MICHAEL R. BARRETT |
| v. | REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I AND II OF THE AMENDED COMPLAINT |
| UNIVERSITY OF CINCINNATI, ET AL | |
| Defendants | |

Plaintiff John Doe respectfully submits this Reply to Defendants' Response in Opposition to Plaintiff's Motion for Partial Summary Judgment on Counts I and II of the Amended Complaint. ("Def. Memo.").

**ARGUMENT**

**A.    Prejudice**

Defendants suggest that Plaintiff is required to show "prejudice." Def. Memo. at 7. Defendants, in making this argument, rely almost exclusively upon *Jahn v. Farnsworth*, 33 F. Supp. 3d 866, 873 (E.D. Mich. 2014), aff'd, 617 F. App'x 453 (6th Cir. 2015), *citing Graham v. Mukasey*, 519 F.3d 546, 549 (6th Cir. 2008).

    **1.    This Court Rejected This Precise Argument in *Nokes v. Miami University***

This precise argument was raised by the Ohio Attorney General's Office in another school discipline case before this Court. *Nokes v. Miami Univ.*, S.D.Ohio No. 1:17-cv-482, 2017 U.S. Dist. LEXIS 136880 (Aug. 25, 2017). *Nokes* involved a student at a public university who alleged that a school disciplinary decision was imposed in violation of his constitutional due process rights. In arguing against a motion for a preliminary injunction, the school made the identical argument based

1

on *Jahn*. *See Defendants' Supplemental Response In Opposition To Plaintiff's Motion For A Preliminary Injunction*, S.D.Ohio No. 1:17-cv-482 (Docket#23).[1] This Court observed that it was "not persuaded . . . that Plaintiff is required to establish that — absent the alleged Constitutional violations — [the] hearing panel would have reached a different outcome." 2017 U.S. Dist. LEXIS 136880, at *27-28. In reaching this holding, this Court distinguished *Jahn* on the grounds that "[i]n *Jahn*,. . . the plaintiff had admitted 'guilt' in advance of the hearing." *Id.* at *28. In addition, this Court rejected the entire prejudice theory:

> [T]his Court is not persuaded . . . that Sixth Circuit plaintiffs are required to show that the "outcome" of the hearing would have been different absent the alleged Constitutional violations. Just as this Court is unwilling to "second guess" the disciplinary panel's outcome, the Court is also unwilling to accept Defendants' invitation to use *Jahn* or *Graham* as a basis to speculate regarding the panel's outcome had the alleged Constitutional violations not occurred—especially where the disciplinary hearing turned on the credibility of the witnesses, many of which were absent for cross-examination (the lack of which is the alleged Constitutional violation of which Plaintiff complains). The Court cannot and will not guess at: (1) how those absent witnesses would have fared during questioning; and (2) how the panel would have weighed the absent witnesses' testimony.

2017 U.S. Dist. LEXIS 136880, at *29-30.

---

[1] In fact, the defendants in *Nokes* used the exact same language to start the argument as Defendants in this case use on page 7-8:

> "In order to prevail on a procedural due process challenge, Plaintiff must not just show faulty procedure; he must also show prejudice." *Jahn v. Farnsworth*, 33 F. Supp. 3d 866, 873 (E.D. Mich. 2014), *aff'd*, 617 F. App'x 453 (6th Cir. 2015) (citing *Graham v. Mukasey,* 519 F.3d 546, 549 (6th Cir. 2008)). "The merits of a procedural due process claim do not need to be examined if there is no demonstration of prejudice." *Id.* at 873-74 (citing *Graham*, 519 F.3d at 549). "In order to establish prejudice, Plaintiff 'must show that the due process violations led to a substantially different outcome from that which would have occurred in the absence of those violations.'" *Id.* at 874 (quoting *Graham,* 519 F.3d at 549).

(S.D.Ohio No. 1:17-cv-482 Docket#23 at 1. *Compare* Def. Memo. at 7-8.)

> 2. **The United States Supreme Court Rejected This Argument in *Goldberg*, *Carey*, and *Zinermon***

Defendants' argument has been expressly rejected by the Supreme Court. The Supreme Court's cases teach that under §1983, a constitutional violation is not complete unless and until the government fails to provide due process; a showing of "prejudice," in this context, means only that a plaintiff also must prove he/she in fact has been deprived of a constitutionally protected interest. *Goldberg v. Kelly*, 397 U.S. 254 (1970); *Carey v. Piphus*, 435 U.S. 247 (1978); *Zinermon v. Burch*, 494 U.S. 113 (1990).

In the seminal case of *Goldberg v. Kelly*, the Court noted that welfare recipients were entitled to a hearing prior to termination of benefits, notwithstanding that the particular plaintiffs might still be denied benefits if the hearing were granted. 397 U.S. 254, 256 n.2 (1970) (observing that "the underlying questions of eligibility that resulted in the bringing of this suit have not been resolved"). In *Carey*, the Court considered a suspension of students without due process; no finding was made as to whether the students would have been suspended if they had received adequate procedural due process.[2] The Court rejected the argument put forth by Defendants that the court should consider whether the suspensions would ultimately have been imposed:

---

[2] Defendants argue that "*Carey* actually confirms that [prejudice] is essential to the analysis." Def. Memo. at 11. Defendants reading of *Carey* has two problems.

First, this reading of *Carey* was rejected by the Court in *Zinermon*.

Second, even if Defendants reading of *Carey* is correct, this reading applies only to the measure of damages, and has no application to claims for declaratory and injunctive relief. *See infra*. Defendants' reliance on *Sutton v. Cleveland Bd. of Edn.*, 958 F.2d 1339 (6th Cir. 1992), is misplaced for this second reason. In *Sutton*, the court observed that Plaintiff had obtained, essentially, declaratory relief in that their procedural due process rights were violated. The court further found that the plaintiffs in *Sutton* would qualify as "prevailing parties" for purposes of a fee award pursuant to 42 U.S.C. §1988 on this basis alone. 958 F.2d at 1353. The court said, "The denial of procedural due process is actionable for nominal damages without proof of actual injury." 958 F.2d at 1352.

3

> Even if [the students'] suspensions were justified, and even if they did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process. . . . . the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions . . . because of the importance to organized society that procedural due process be observed.

.
435 U.S. at 265-66. The Supreme Court later, in *Zinermon*, removed any doubt the *Carey* decision meant that a reviewing court is not to examine the merits of the underlying claim in order to find a due process violation: "to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." 494 U.S. at 126. In doing so, The *Zinermon* Court explained that *Carey* explicitly rejected the Defendant's argument that the Plaintiffs must show prejudice in order to establish a procedural due process violation. The Court said:

> The Court in *Carey* explained that a deprivation of procedural due process is actionable . . . without regard to whether the same deprivation would have taken place even in the presence of proper procedural safeguards.

494 U.S. at 126 n. 11. *See also Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991) (stating that, "[c]onceptually, in the case of a procedural due process claim, 'the allegedly infirm process is an injury in itself'"), *quoting Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir. 1989); *Caine v. Hardy*, 943 F.2d 1406, 1411 (5th Cir. 1991)("Procedural due process considers not the justice of a deprivation, but only the means by which the deprivation was effected."); *Hill v. Ypsilanti Hous. Comm.*, E.D.Mich. No. 09-13562, 2010 U.S. Dist. LEXIS 82556, at *8 (Aug. 10, 2010) ("Plaintiff may be entitled to damages for a procedural due process violation regardless of proximate causation as to actual injury . . .")

### 3. *Jahn* And The Other Cases Relied Upon By Defendants Are Inapposite

Defendants' reliance on *Jahn v. Farnsworth*, *supra* for a position contrary to *Goldberg, Carey*, and *Zinermon* is misplaced.[3] The *Jahn* court appears to have incorrectly extended a line of cases dealing with the due process rights on immigrants who entered the United States illegally. 33 F. Supp. 3d at 873, *citing Graham v. Mukasey*, 519 F.3d 546, 549 (6th Cir. 2008). In *Graham* the court observed that prejudice was necessary in due process hearings because of the special nature of immigration hearings. *Graham* relied on an earlier Sixth Circuit decision dealing with immigration law. *Warner v. Ashcroft*, 381 F.3d 534 (6th Cir.2004) In *Warner*, the Sixth Circuit observed, "proof of prejudice is necessary to establish a due process violation *in an immigration hearing*." *Warner v. Ashcroft*, 381 F.3d at 539 (emphasis supplied). As a result, this line of cases is inapposite. *See Garner Properties & Mgt. v. Charter Twp. of Redford*, E.D.Mich. No. 15-14100, 2017 U.S. Dist. LEXIS 125403, at *23 (Aug. 8, 2017) (discussing possibility that "Graham, as well as the cases on which it relied, relate to determinations regarding deportation of illegal aliens").

Defendants suggest that "there is no indication that *Graham* and *Warner* should be limited to the immigration context." Def. Memo. at 8. However, limiting these cases to the unique context of immigration makes sense; courts have a constitutionally limited role in the immigration context. *See e.g. Flores v. Meese*, 934 F.2d 991, 1004 (9th Cir.1990) (remarking on the "plenary power of Congress and the narrowness of judicial review in the immigration context"); *Fuller v. Gonzales*, D.Conn. No. 3:04cv2039 (SRU), 2005 U.S. Dist. LEXIS 5828, at *12 (Apr. 8, 2005) (recognizing "Congress's

---

[3] The demise of any 'prejudice' rule after *Zinermon* is illustrated by the Fifth Circuit's decision in *Keough v. Tate County Bd. of Ed.*, 748 F.2d 1077 (5th Cir. 1984). In that case, the Fifth Circuit had found that a plaintiff must demonstrate "substantial prejudice" in order to mount a successful procedural due process claim. Courts within the Fifth Circuit have recognized the *Carey* and *Zinermon* abrogate this holding. *See Judeh v. La. State Univ. Sys.*, No: 12-1758, 2013 U.S. Dist. LEXIS 146842 (E.D. La. Oct. 10, 2013) ("The Court does not decide this case on the basis of *Keough* and its progeny, because there is an inherent tension between that line of cases and the Supreme Court's holding in *Carey*.").

considerable authority to abrogate" liberty interests of aliens); *Bains v. United States*, N.D.Ohio No. 1:13CV1014, 2014 U.S. Dist. LEXIS 93215, at *8 (July 9, 2014) ("the power to exclude aliens is a fundamental sovereign exercise of power, largely immune from judicial control"), *citing Fiallo v. Bell*, 430 U.S. 787, 792 (1977). The prejudice requirement, like the harmless error doctrine often applied in criminal appeals or the immigration context, makes sense in those contexts: "it prevents the needless remanding of a case that will be resolved identically even when the procedural infirmity is remedied." *Reid v. Donelan*, 2 F. Supp. 3d 38, 44 (D.Mass.2014). Defendants' contention – that "it stands to reason" that a rule from immigration and criminal cases is applicable -- fails to distinguish between a challenge to the outcome of a school disciplinary hearing and an objection that the hearing failed to provide adequate due process.[4]

This aspect of *Graham* has never been extended to a situation outside of the immigration context *except* in the limited situation where a party confessed or otherwise admitted to a violation of an administrative rule. *Jahn* fits this description. In *Jahn* the student admitted that he committed a theft of a laptop, subjecting him to suspension or expulsion. 33 F. Supp. 3d at 874. The 'prejudice' observation in that case can, thus, be understood as an acknowledgement that once a student has admitted his guilt, the need for a hearing is substantially lessened. This Court, for example, has described the prejudice prong as involving situations where "there is nothing that [a party] could plausibly have said that would alter" the outcome of the hearing. *Bright v. Gallia Cty.*, S.D.Ohio No. 2:12-cv-800, 2013 U.S. Dist. LEXIS 77520, at *25-26 (June 3, 2013). The only relatively recent Sixth Circuit decision cited by Defendants illustrate this point. *Shoemaker v. City of Howell*, 795 F.3d 553, 563 (6th Cir. 2015). In *Shoemaker*, the court considered a due process challenge to a municipal ordinance

---

[4] Plaintiff is not, for purposes of his §1983 claim, claiming that the University's decision respecting removal was incorrect (although it was); Plaintiff is claiming that the disciplinary action imposed by UC infringes on his interests and that UC may only impose discipline in compliance with constitutionally mandated safeguards and procedures.

6

prohibiting the excessive growth of weeds or grass. The court cited *Graham* not for the broad proposition urged by Defendants, but for the more limited principal that the plaintiff was "precluded from mounting a procedural-due-process claim . . . even if a due-process violation had in fact occurred" as a result of "not disputing the charges against him." 795 F.3d at 563.  The court observed that there could be no procedural due process violation because the plaintiff "had no interest in contesting whether" he had violated the ordinance and, in fact, "readily conceded that" he had done so. *Id.*  Notably, all of the cases cited by the Sixth Circuit in *Shoemaker* involved situations where the plaintiff had admitted to the violation. *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1242 (10th Cir. 2001) (student was expelled after admitting that he assaulted his roommate); *Keough*, 748 F.2d at 1083 (5th Cir. 1984) (plaintiff "admitted the charges and therefore his suspension did not result from a procedural due process deprivation."); *Black Coalition v. Portland Sch. Dist. No. 1*, 484 F.2d 1040, 1045 (9th Cir. 1973) (declining to order a new hearing because the student had "admitted all of the essential facts which it is the purpose of a due process hearing to establish"). [5]

Defendants, notably, are not suggesting that the imposition of discipline in this case at a hearing consistent with this Court's injunction is inevitable.  This is significant because, in the school discipline context, the prejudice requirement has only been applied where a student admitted to a violation. For example, in *Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602 (E.D.Va. 2016), the court, citing *Graham*, considered whether a student who alleged that he had been suspended in violation of his due process rights had shown "prejudice."  Tthe court limited the prejudice inquiry to whether the plaintiff had "confess[ed] with such clarity that it is inescapable that any rational fact-

---

[5] Cases cited by Defendants are inapposite for this reason.  *Hickey v. Chadick*, S.D.Ohio No. 2:08-CV-0824, 2010 U.S. Dist. LEXIS 151005 (Aug. 5, 2010); *Joseph v. St. Charles Parish School Bd.*, 736 F.2d 1036 (5th Cir.1984).  In *Hickey* this Court found that there was no due process violation in a debarment proceeding because the plaintiff's own records demonstrated that debarment was appropriate. 2010 U.S. Dist. LEXIS 151005 at *45-46.  Similarly, in *Joseph* (a case preceding *Zinermon*) the plaintiff was responsible for the delay which led to the alleged due process violation.  736 F.2d at 1039

7

finder would find him responsible for sexual misconduct regardless of the procedural protections in place." 149 F. Supp. 3d at 622.  Similarly, in *Flaim*, the Sixth Circuit held that a hearing panel's decision to refuse a student's request to cross-examine his arresting officer did not violate his due process rights because the student had admitted to the conduct of which he was accused.  418 F.3d at 641, 643.  Other courts have recognized that a due process violation is not cognizable where a student had admitted to the misconduct.  See *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608 (5th Cir. 2004) (observing that whether a student admitted the charges leveled against him is relevant); *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1242 (10th Cir. 2001) (considering whether a student admitted to misconduct); *Beauchene v. Miss. College*, 986 F. Supp. 2d 755, 773 (S.D. Miss. 2013) (student who had admitted misconduct "may have forfeited his right to due process").

### 4. This Court Should Not Accept Defendants' Invitation To Speculate On The Likely Outcome Of a Hearing Without Due Process Violations

Defendants suggest that there is an issue of fact "which should be resolved by the jury" regarding whether the absence of the Complainant "caused any legal prejudice."  Def. Memo. at 10.  This would have the effect of doing precisely what Defendants decry – turning a trial of this matter into a re-trial of the underlying allegations of sexual misconduct by Plaintiff.  *See* Def. Memo. at 10 (collecting cases).

But, even assuming that this Court should speculate as to outcome if Plaintiff had been given the opportunity to confront witnesses who provided adverse information, Defendants have failed to provide a non-speculative reason to doubt the reliability of the outcome.  Instead, Defendants argue that Plaintiff was found responsible "based on [his] own statements at the ARC hearing." Def. Memo. at 10.  This argument inappropriately minimizes the role of cross-examination in the truth finding process.  *See Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.").  To deny the value of cross- examination is to deny hundreds of years of tradition recognizing the fundamental role of cross-

examination in the truth finding process. The Sixth Circuit has long observed that "cross-examination is 'the great and permanent contribution of the Anglo-American system of law . . .'" *Brown v. United States*, 234 F.2d 140, 144 (6th Cir. 1956), *quoting Wigmore on Evidence*, Vol. 5, 3rd Ed., §1367. It is only by subjecting the adverse witnesses to cross-examination that an accused student, and eventually the hearing panel or factfinder, "can assess the credibility of those who disclaim any improper motivations." *Hart v. Lew*, 973 F.Supp.2d 561, 574 (D.Md. 2013) (referring to cross-examination as the "greatest legal engine ever invented for the discovery of truth.").

### 5. Prejudice Would Not Apply To Claims For Injunctive Or Declaratory Relief

Confusion may exist in the caselaw because some courts seem to refer to 'prejudice' in a manner that is not sufficiently distinct from 'damages.' Any 'prejudice' requirement is best understood as akin to standing; a plaintiff claiming a procedural due process violation need only show that he/she was deprived of a right or interest protected by the Fourteenth Amendment. *See Sorich v. Terry*, D.Neb. CV No. 86-L-722, 1989 U.S. Dist. LEXIS 9115, at *37-38 (June 29, 1989) (the word 'prejudice' in the [due process] context "means some degree of harm or adversity unique to the plaintiff resulting from the constitutional violation which is clearly distinct from that suffered by the rest of the population, even though it may be slight in nature"). In other words, there is no denial of procedural due process without a constitutionally cognizable deprivation (such as suspension from school). This Court acknowledged in its decision granting in part and denying in part Defendant's Motion to Dismiss, because of the issuance of a Preliminary Injunction, Plaintiff has suffered little or no actual damage or harm resulting from the insufficient process. *Doe v. Univ. of Cincinnati*, S.D.Ohio No. 1:16cv987, 2018 U.S. Dist. LEXIS 51833, at *16 (Mar. 28, 2018) ("Plaintiff has represented to the Court that he is only pursuing declaratory and injunctive relief.").

The "prejudice" inquiry, to the extent it exists as described by Defendants, would apply to a claim for damages and not a claim for declaratory or injunctive relief. One court explains, "The

9

premise that a due process violation is not grounds for reversal absent a showing of that degree of prejudice, has no bearing on a plaintiff's right to seek to enjoin due process violations from occurring in the first instance." *De Abadia-Peixoto v. United States Dept. of Homeland Sec.*, 277 F.R.D. 572, 575 (N.D.Cal. 2011). *See also Reid,* 2 F. Supp. 3d at 44 (D.Mass. 2014) (observing that "it makes little sense to apply the prejudice requirement" to claims for declaratory and injunctive relief). A court in the Northern District of Ohio reached this same conclusion. *Slough v. Telb*, 644 F.Supp.2d 978 (N.D.Ohio 2009). In *Slough* the court observed, the "argument that the §1983 claims must be dismissed for want of alleged actual injury is legally unsound and factually untrue." 644 F.Supp.2d at 994. The *Slough* court observed that a plaintiff may seek compensatory damages for any actual injuries suffered as well as mental distress caused by the violations of plaintiff's constitutional rights. The court also observed that a plaintiff alleging a violation of procedural due process may seek nominal damages, punitive damages, and various forms of equitable relief regardless of the ability to recover of actual damages. 644 F.Supp.2d at 994-995.

**B.      Defendants' Efforts To Distinguish The Sixth Circuit's Opinion Are Unavailing**

Defendants suggest that the Sixth Circuit did not consider whether the "ARC panel's decision that Plaintiff was responsible for violating the University's sexual misconduct policy was based on Plaintiff's own statements at the ARC panel hearing." Def. Memo. at 13-14. This is incorrect. The Sixth Circuit, like this Court, was able to review the entire administrative record, including a transcript of the ARC hearing. Nothing in this record suggests that Plaintiff admitted to a violation of the UC code of conduct. The Sixth Circuit observed the opposite: Plaintiff "disputed Roe's overall interpretation of events and a number of [the complainant's] specific claims." *Doe v. Univ. of Cincinnati*, 872 F.3d at 401. As a result, there is no issue of fact on this question.

Defendants bemoan the fact that "if the alleged victim does not attend the disciplinary hearing to be questioned, colleges and universities are not permitted to find the accused responsible based on

10

the accused's own statements at the hearing." Def. Memo. at 14-15. Defendant's argument fails to appreciate the important distinction between whether a student admits to a violation, like in *Flaim*, or the finder-of-fact chooses to disbelieve the student's denials, as in this case. The Sixth Circuit made this distinction clear:

> the circumstances of the present case pose the credibility contest we contemplated in *Flaim*: John Doe maintains that their sex was consensual; Jane Roe claims that it was not. Importantly, the Committee's finding of responsibility necessarily credits Roe's version of events and her credibility.

872 F.3d at 401. The Sixth Circuit's opinion imposes restrictions on university disciplinary hearings in those circumstances where the student has not admitted to the violation or there is not other evidence sufficient to sustain the University's findings and sanctions apart from the alleged victim's hearsay statements. 872 F.3d at 401, *citing Plummer v. Univ. of Houston*, 860 F.3d 767, 775-76 (5th Cir. 2017) (cross-examination was unnecessary where misconduct by student caught on video). Notably, Defendants do not suggest that the Sixth Circuit's decision will lead to less accurate decisions – just that it will be harder for the school to impose discipline on students. Defendants complaints, in this respect, seek to turn a feature of the Sixth Circuit's opinion into a bug. In fact, in the Sixth Circuit's opinion specifically considered the burden imposed on the school in reaching its holding. 872 F.3d at 404-405.[6]

---

[6] Defendants describe the UC procedure as a "board of inquiry." Def. Memo. at 14 n.2. Really, they could be better described as star chambers, where those accused of misconduct must defend themselves against allegations based only on hearsay and the board determines whether its finds the denials credible. *See Faretta v. California*, 422 U.S. 806, 821–22 (1975).("the Star Chamber has, for centuries, symbolized disregard of basic individual rights.").

## CONCLUSION

The Motion for Partial Summary Judgment should be granted.

.

        Respectfully submitted,

        _____/s/ Joshua Adam Engel_____
        Joshua Adam Engel (0075769)
        Anne Tamashasky (0064393)
        ENGEL AND MARTIN, LLC
        4660 Duke Dr., Ste 101
        Mason, OH 45040
        (513) 445-9600
        (513) 492-8989 (Fax)
        engel@engelandmartin.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via the Court's CM/ECF system May 5, 2018 upon all counsel of record.

        _____/s/ Joshua Adam Engel_____
        Joshua Adam Engel (0075769)